UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

CIVIL ACTION NO. 09-CV-7-HRW

WILLIAM O'CONNOR                                                    PETITIONER

VS:                         **MEMORANDUM OPINION AND ORDER**

E. K. CAULEY, *Warden*                                             RESPONDENT

The Court considers the following pleadings:

(1)     William Russell O'Connor's *pro se* petition for writ of habeas corpus filed

pursuant to 28 U.S.C. § 2241, R.2;

(2)     The Response filed by respondent E. K. Cauley, Warden of FCI-Ashland;

(3)     Petitioner O'Connor's letter, R. 13, construed as a "Motion Requesting a Ruling

on his 28 U.S.C. § 2241 Petition," R. 13; and

(4)     Respondent Cauley's "Notice of Filing," R. 14.

For the reasons set forth below, O'Connor has not stated a valid Fifth Amendment due

process claim regarding the United States Parole Commission's ("USPC") retardation of his

parole dates or its rejection of various proposed release plans. His § 2241 petition will be

denied, and this action will be dismissed with prejudice.

PROCEDURAL HISTORY

The specific factual allegations which O'Connor asserted in his § 2241 petition, R. 2, are

set forth in detail in the Memorandum Opinion and Order ("Opinion and Order") entered on June

10, 2009. The Court has constructed the following chronology of events using relevant passages

from both O'Connor's § 2241 petition; Warden Cauley's Response to the § 2241 Petition , R. 11; and Warden Cauley's recently filed "Notice of Filing," R. 14, which contains an status update based upon the Declaration of Patricia Vines, Case Analyst with the USPC.

In April of 1985, O'Connor was convicted of Armed Robbery in the Passaic County Superior Court of New Jersey. A fifty- year sentence was imposed with a minimum of 20 years to be served under state law before he would be eligible for parole, but was later reduced to 15-45 years. After a transfer to the custody of the U.S. Attorney General as a witness security case and a parole grant by the New Jersey Parole Board, the USPC began supervising O'Connor on parole effective June 24, 2002, under 18 U.S.C. § 3522. O'Connor was terminated from the Witness Security Program when he was arrested and charged for driving under the influence of alcohol and speeding on April 21, 2004. A parole violator warrant was issued and executed on March 22, 2005, for use of dangerous and habit forming drugs (cocaine and alcohol), law violation (driving under the influence), violation of drug aftercare special condition, and failure to report change in residence.

After O'Connor waived a revocation hearing, on May 6, 2005, the USPC revoked his parole, ordered that none of the time spent on parole be credited, and established a presumptive parole date of March 21, 2006, after the service of 12 months. On September 22, 2005, the USPC established an effective parole date of March 21, 2006, with no change in the presumptive parole date.

On September 30, 2005, the Probation Office in the Northern District of Georgia rejected O'Connor's first proposed release plan. That rejection was based on the fact that Mr. And Mrs. Sanders, the parents of O'Connor's girlfriend, would not allow O'Connor to reside with them

2

and because O'Connor's security would be compromised at a Community Corrections Center ("CCC"). A second proposed plan, whereby O'Connor would reside with a Mr. Miracle and a Ms. Norton in Marietta, Georgia, was approved on March 9, 2006, and O'Connor was reparoled on March 21, 2006.

On or about October 19, 2006, O'Connor was arrested by state authorities in Cobb County, Georgia, and charged with a number of violations including speeding and driving under the influence. He received a twelve-month probationary sentence in state court on the charges, and was then transferred to the custody of the federal Bureau of Prisons ("BOP"). Pursuant to the terms of an expedited revocation proposal which O'Connor signed on February 1, 2007, the USPC issued a "Notice of Expedited Revocation" on February 9, 2007, noting that O'Connor had violated the terms of his parole by Driving Under the Influence. The USPC revoked O'Connor's parole and determined he would receive no credit for time spent on parole. The USPC required O'Connor to serve 14 months for his parole violation and set a presumptive parole date of December 16, 2007.

On August 3, 2007, the USPC issued a "Notice of Action" letter informing O'Connor that his presumptive parole date was being converted to an effective parole date of December 16, 2007. The USPC imposed an additional, special condition that O'Connor be placed in a CCC because of his drug dependency and his inability to secure a satisfactory release plan.

On November 20, 2007, the USPC issued another "Notice of Action" letter postponing O'Connor's presumptive parole date by ninety (90) days, until March 15, 2008. The USPC stated that O'Connor was to remain in CCC placement for 120 days, and reiterated that O'Connor was to participate in either an inpatient or outpatient program for drug and alcohol

3

addiction. The USPC noted that while O'Connor had maintained good institutional adjustment, additional time was needed to develop a satisfactory release plan.

On August 28, 2008, the USPC retarded the effective parole date until an acceptable release plan was developed, with a review of the record every thirty days.[1]  On the following dates, between O'Connor's parole revocation and filing of the instant § 2241 petition on January 29, 2009, the Northern District of Georgia Probations Office rejected three more of release plans proposed by O'Connor, for the following reasons:   (1) October 5, 2007, because of the strict religious requirements of the Creative Ministries program; (2)  February 13, 2008, because the Potter's House did not sponsor release programs for state or federal prison inmates;[2] and (3) December 2, 2008, because of lack of cooperation from Andy and Tammy Ledford of Marietta Georgia, the couple with whom O'Connor proposed to reside.

By letter dated December 20, 2008, the Ledfords challenged the Northern District of Georgia Probation Office's claim that they had been uncooperative, and stated that they wanted O'Connor to reside with them. R. 2-3. p.8; R. 11-37, p.1.

In April of 2009, after he had filed the instant habeas corpus petition, O'Connor renewed his release plan to reside with the Ledfords.  The USPC re-investigated O'Connor's release plan to reside with the Ledfords, but on June 9, 2009 the Northern District of Georgia Probations Office denied it, again citing a lack of co-operation from the Ledfords.  The January 17, 2010, Declaration submitted by Patricia D. Vines, Case Analyst with the USPC, addresses the efforts

---

[1]

"Retard" is a term of art in the parole context and means to postpone a presumptive parole date. *See King v. Simpson*, 189 F.3d 284, 288 (2d Cir.1999).

[2]

The Probations Office requested re-designation to a district where O'Connor had family ties.

4

undertaken, between July 15, 2009 and November 6, 2009, to establish an acceptable release plan for O'Connor.[3]

On July 15, 2009, the USPC was still considering O'Connor's request to reside with the Ledford as a release option. Pursuant to instruction from USPC Commissioner Patricia Cushwa and the USPC's General Counsel, and after consulting with U.S. Probations Officer Keith Scott, Vines contacted Mr. Ledford to ascertain whether he and his wife would be willing to have O'Connor live with them after his release. On July 20, 2009, Ledford informed Vines that although he would not permit O'Connor to live with them because their daughter was residing with them, he was looking for a residence for Mr. O'Connor and would advise Vines of his findings. Vines left three messages for Ledford between July 27, 2009 and August 4, 2009, but received no further information from Ledford.

Having received no response from Mr. Ledford, Vines instructed BOP Unit Manager Brian Sparks on August 14, 2009 to discuss a proposed release plan with O'Connor. When O'Connor was told about the unsuccessful inquiries to Ledford, he advised Sparks that he had no alternative plans and asked to be placed in a CCC (halfway house) if that was still an option. On August 26, 2009, Commissioner Cushwa and the General Counsel authorized Vines to seek placement of O'Connor in a CCC as a condition of parole with the proviso that any CCC would have to be investigated for possible "danger areas" because O'Connor is a witness security case. The United States Marshal's Service informed Vines that all proposed areas for release were considered "dangerous" for O'Connor.

---

[3]

  Vines submitted documentation verifying each step taken with respect to establishing a release plan for O'Connor, as outlined in her Declaration.

On September 2, 2009, Vines contacted Tom Stone with the U.S. Probations Office in New Jersey (O'Connor's sentencing district) to ascertain if O'Connor could be placed in a New Jersey CCC as a condition of parole. Stone requested that Vines fax him a "Notice of Action: to commence the process. According to Vines, she sent Stone e-mails on September 14, 2009 and October 1, 2009, but Stone did not follow up with her until October 6, 2009. On October 26, 2009, Vines sent an e-mail to O'Connor's BOP case management coordinator seeking assistance to set up a CCC placement for O'Connor.

On November 5, 2009, Vines prepared an Memorandum for Commissioner Cushwa recommending that the USPC set a parole date of February 15, 2009 for O'Connor in order to facilitate the process of securing a CCC for him. Commissioner Cushwa agreed and the USPC issued a "Notice of Action" letter dated November 6, 2009 which: (1) retarded O'Connor's parole date by 23 months, to February 15, 2010; and (2) imposed a special condition of parole that the parolee (O'Connor) reside in a CCC.

O'Connor has filed a letter, R. 13, construed as a motion requesting a ruling on his § 2241 petition. He has not filed a response to Vines's recent Declaration.

PARTIES' LEGAL ARGUMENTS

In his § 2241 petition, O'Connor alleged that over a thirteen-month period of time, the USPC arbitrarily and capriciously denied him release on parole on five separate occasions. Petitioner O'Connor complained the USPC improperly revoked the presumptive release dates of December 15, 2007 and March 15, 2008, respectively. Specifically, O'Connor complained that the USPC refused to approve his proposed plan whereby he would live with the Georgia couple, Andy and Tammy Ledford. The USPC rejected that plan, stating that the Ledfords had

6

failed to assist the USPC in arranging a home visit with both of them present, and that O'Connor's lack of ties to Georgia area justified rejection of that proposal. O'Connor claims that the USPC's actions violated his right to due process of law guaranteed by the Fifth Amendment of the United States Constitution.

The respondent argues that the conversion of O'Connor's presumptive parole date to an effective parole date was conducted in compliance with 28 C.F.R. § 2.14(b)(4)(ii), and that the imposition of the condition was in compliance with §§ 2.40(b), and 2.204(b)(2)(i) as part of the USPC's duty to ensure the release is provided with adequate supervision upon release.

The respondent further asserts that the retardation of O'Connor's parole date by 90 days on November 20, 2007, to a parole effective date of March 15, 2008, as well as the reopening of this date for a special reconsideration hearing,  complied with § 2.28(e) and (f).  The respondent contends that O'Connor was notified of the reasons for the reopening, the retardation of the date, and the purpose of the hearing, which was conducted in accordance with the procedures in §§ 2.12 and 2.13.

As for the denial of O'Connor's various proposed release plans, the respondent asserts three arguments: (1) that until O'Connor's mandatory release date of December 10, 2014, arrives, granting discretionary parole is conditioned upon compliance with the USPC's rules and regulations; (2) that the USPC retarded O'Connor's parole on the specified dates because O'Connor's proposed release plans failed to meet the criteria of 28 C.F.R. 2.33, which requires, among other things, that an applicant for parole must establish legitimate employment and an approved residence; and (3) that O'Connor's Fifth Amendment due process rights had not been

7

violated, noting that each parole decision was rendered pursuant to the USPC's regulations which afforded O'Connor adequate procedural protection.

The respondent further notes that pursuant to *Greenholtz v. Inmates of Nebraska Penal & Corral. Complex*, 442 U.S. 1, 7 (1979), there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. The respondent further cites *Greenholz* for the proposition that there is no constitutional guarantee "that all executive decision making must comply with standards that assure error-free determinations." *Id.* at 8.

DISCUSSION

Congress has committed to the sound discretion of the Parole Commission the responsibility for making parole eligibility determinations. *United States v. Addonizio*, 442 U.S. 178 (1979); *See also* 18 U.S.C. § 4203(b) (1)-(3). Pursuant to § 4218(d), neither the findings of fact of the USPC nor its credibility determinations are subject to judicial review under 5 U.S.C. § 701(a)(2), except to determine whether a rational basis exists for its conclusions. *Farkas v. United States*, 744 F.2d 37, 38-39 (6th Cir. 1984); *Kimberlin v. White*, 7 F.3d 527, 533 (6th Cir. 1993); *Hackett v. United States Parole Comm'n.*, 851 F.2d 127, 129-30 (6th Cir. 1987) (per curiam). Put another way, the function of judicial review of a Commission decision is simply to determine whether the Commission abused its discretion. *See United States v. Friedland*, 83 F.3d 1531, 1542 (3d Cir.1996). With these considerations in mind, the Court reviews the relevant USPC regulations regarding the retardation of parole dates.

A "presumptive parole date" is set far in advance of a prisoner's scheduled release and is contingent upon the Commissioner's finding of good conduct and preparation of an adequate

8

release plan. 28 C.F.R. § 2.12(d).[4] Section 2.14(b)(1) provides that "[t]he purpose of a pre-release review shall be to determine whether the conditions of a presumptive release date by parole have been satisfied. At least sixty days prior to a presumptive parole date, the case shall be reviewed on the record, including a current institutional progress report."

The term "effective parole date" refers to a parole date that has been approved following an in-person hearing held within nine months of such date or following a pre-release record review. 28 C.F.R. § 2.1(h). After the Regional Commissioner approves the plan, the "presumptive" parole date becomes an "effective" release date and the inmate is released on that date unless he has new violations or lapses in his release plan completion. 28 C.F.R. § 2.1(h); 28 C.F.R. § 2.14(b)(4)(ii); 28 C.F.R. § 2.28(b)(e)-(f); 28 C.F.R. § 2.34.

A release plan establishes a program to assist the prisoner in his reintegration into society. 28 C.F.R. § 2.33; *Kirk v. White*, 627 F.Supp. 423, 425 (E.D. Va. 1986). *See also* 28 C.F.R. § 2.12(d) (the fulfillment of "[a] presumptive parole date shall be contingent upon an affirmative finding by the Commission that the prisoner has a continued record of good conduct and a suitable release plan . . . ."); 28 C.F.R. § 2.28(e) ("release . . . shall be conditioned upon the completion of a satisfactory plan for parole supervision.").

As the respondent correctly notes, the granting of discretionary parole is conditioned upon compliance with 28 C.F.R. 2.33, which requires, among other things, that an applicant for parole must establish legitimate employment and an approved residence. Here, O'Connor's

---

4

Title 28 C.F.R. § 2.12(d) provides in relevant part as follows:

A presumptive parole date shall be contingent upon an affirmative finding by the Commission that the prisoner has a continued record of good conduct and a suitable release plan and shall be subject to the provisions of §§ 2.14 and 2.28 . . . .

9

parole release date was expressly conditioned upon his "completion of a satisfactory plan for parole supervision," § 2. 28(e). However, O'Connor could not have "completed" a satisfactory plan because he did not *present or propose* an approved, satisfactory plan which complied with § 2.33.

After O'Connor's 2007 parole revocation, his various proposed release plans were rejected for the following reasons: (1) one plan failed to address Connor's drug dependency; (2) one plan proposed residence with the Creative Ministries program which had objectionable strict religious requirements; (3) one plan suggested residence in a facility which did not sponsor release programs for state or federal prison inmates; and (4) between December 2, 2008, and June 9, 2009, the Ledfords did not provide the USPC with sufficient cooperation in response to inquires to arrange a home visit.

Lacking a valid release plan, the USPC clearly had a rational basis for converting O'Connor's presumptive parole to an effective date of December 16, 2007, and for retarding his presumptive parole three times thereafter: (1) on October 5, 2007 (retarding until March 15, 2008); (2) on August 28, 2008, retarding until such time as an acceptable release plan was developed, with review every thirty days); and (3) on November 6, 2009 (retarding O'Connor's parole date by 23 months, to February 15, 2010). These decisions were based upon O'Connor's repeated failure, with each submitted release plan, to present the USPC with an approved residence, which is one of the criteria of § 2.33.

There was no illegality in the USPC's retarding O'Connor's parole date. The pertinent parole regulation, 28 C.F.R. § 2.83, *Release Planning*, requires that "[a]ll grants of parole shall be conditioned on the development of a suitable release plan and the approval of that plan by the

10

Commission." 28 C.F.R. § 2.83(a). Further, the regulation specifically provides for retarding a parole date if there is no release plan for the prisoner: "A Commissioner may retard a parole date for purposes of release planning for up to 120 days without a hearing . . . ." 28 C.F.R. § 2.83(d). *See Trevino v. Dewalt*, No. 06-00232, 2006 WL 3256820, at *3 (E.D. Ky. November 9, 2006) (USPC properly retarded parole date pursuant to 28 C.F.R. § 2.83(d) absent a satisfactory release plan); *Housler v. Nelson*, 453 F.Supp. 874, 876 (D. Conn. 1978) (release on parole was delayed because of the lack of a suitable release plan); *Paulus v. Fenton*, 443 F. Supp. 473, 477 (M.D. Pa. 1977) (same). While O'Connor submitted several release plans, and while he may have believed they were satisfactory and should have been accepted, the USPC had legitimate reasons to deny his proposals based upon their deficiencies as discussed above.

The respondent correctly notes that until O'Connor's mandatory release date of December 10, 2014, arrives, he has no guaranteed right of early parole. *Green v. McCall*, 822 F.2d 284, 292 (2d Cir. 1987) (holding that "the liberty interest of the presumptive parolee occupies a lower place in the inmate-liberty-interest continuum than does the interest of a parole grantee.").

While a presumptive parole date may be considered as an effective parole date, 28 C.F.R. § 2.34(a) clearly authorizes the USPC under to reconsider an effective parole date up until the delivery of the certificate of parole. *See Christopher v. United States Board of Parole*, 589 F.2d 924, 931 (7th Cir.1978); *Webber v. Department of Justice*, No. 02-03093, 2003 WL 23350133, at *3, n.8 (D. Md. February 20, 2003). The granting of discretionary parole is conditioned upon compliance with the USPC's rules and regulations, which include an approved residence in their release plan. Here, O'Connor failed to produce an approved residence in his release plans.

11

The respondent has sufficiently demonstrated that in November of 2008, the USPC made documented efforts to contact the Ledfords to ascertain if their residence would be suitable for O'Connor. *See* Keith Scott Declaration, R. 11-35, pp. 1-4. According to Scott's Declaration, the Ledfords were unresponsive when he tried several times to contact them. In a December 20, 2008, letter to the USPC, the Ledfords disputed letter Scott's allegations that they were unresponsive. R. 2-3, p.8.

Based on Patricia Vines' Declaration, it appears that any dispute as to whether the Ledfords were unresponsive to the USPC's inquiries in late 2008 or early 2009 is now moot. As of July of 2009, Mr. Ledford was no longer willing to allow O'Connor to reside in his residence because his daughter was also residing there.[5] According to Vines, Ledford failed to provide the USPC with any further leads as to alternative placement for O'Connor in that area. After the Ledfords refused to allow O'Connor to reside in their home in July of 2009, the USPC has continued to assist O'Connor in his quest to obtain CCC placement.

Based on Vines's Declaration, Mr. Ledford has now revoked his prior offer to provide of O'Connor with a release residence, and has apparently abandoned any interest in assisting the USPC locate an alternative source. O'Connor's claim that the USPC unfairly denied his "Ledford" release plan has become moot.[6]

_____

[5]

The Ledford's ultimate refusal to allow O'Connor to reside with them appears to have some similarity to Mr. and Mrs. Sanders's decision to refuse to allow O'Connor to live with them in September of 2005 (prior to O'Connor's parole revocation). The Sanders were the parents of O'Connor's girlfriend.

[6]

Given the benefit of hindsight in this proceeding, it could even be argued that had the USPC allowed O'Connor to reside with the Ledfords in late 2008 or early 2009, as O'Connor had proposed, that decision could have caused dire, adverse results given the fact that just a few months later, in

12

O'Connor has filed a letter requesting a ruling as to the legality of the USPC's actions in this matter and stated in that letter that he is entitled to the relief stated in his § 2241 petition, R. 13. That letter could indicate that O'Connor does not agree with the current plan to locate him in any available CCC, which according to Vines, exists only in New Jersey. Vines stated O'Connor was made aware that the Ledfords were no longer a residential option and that O'Connor had no alternative plans. However, O'Connor has not disputed any aspect of Vines's January 17, 2009 Declaration and the status report contained therein. It can reasonably be assumed that the "Ledford" release plan which O'Connor previously and strenuously advanced in his § 2241 petition is no longer an available option.

The record reveals a rationale basis for the actions taken by the USPC. There is no evidence that the retarding of O'Connor's parole dates was based on impermissible considerations or that the actions were either arbitrary or capricious. Indeed, the USPC actions in retarding the parole dates were warranted on all accounts. *See Razolli v. FCI-Allenwood*, No. 04-02495, 2006 WL 89215,at *11 (M. D. Pa. Jan, 11, 2006) (USPC had a rational basis for retarding several successive parole dates pursuant to 28 C.F.R. § 2.28(e) based on prisoner's failure to submit an acceptable plan).

O'Connor's release issues will presumably be resolved at the February 15, 2010 parole hearing. However, for purposes of the specific claims asserted in this § 2241 petition, O'Connor has not stated a valid Fifth Amendment due process claim. His § 2241 petition will be denied, and this action will be dismissed with prejudice.

---

July of 2009, Mr. Ledford determined that he did not want O'Connor living under the same roof with his daughter.

13

CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1).     William Russell O'Connor's letter, construed as a "Motion Requesting a Ruling on his 28 U.S.C. § 2241 Petition," R. 13, is **DENIED** as **MOOT**.

(2).     O'Connor's petition for writ of habeas corpus [R. 2] is **DENIED**.

(3).     This action shall be **DISMISSED WITH PREJUDICE** and **STRICKEN** from the active docket.

(4).     Judgment shall be entered contemporaneously with this Order in favor of E. K. Cauley, the named Respondent.

This 16th day of February, 2010.



HENRY R. WILHOIT, JR.
SENIOR U. S. DISTRICT JUDGE